MADDOX, Justice
(dissenting).
The sole issue presented by this motion is whether Donald V. Watkins, who was appointed by the Governor on March 3,1994, to fill a vacancy on the board of trastees of Alabama State University for a term that expires on January 31, 2002, could continue to serve as a member of the board after April 25,1994, when the Senate adjourned sine die without taking action on his appointment. The trial court, citing Dunn v. Alabama State Univ. Board of Trustees, 628 So.2d 519 (Ala.1993), held that “adjournment [of the Senate] sine die constituted the adverse action contemplated by [Ala.Code 1975, § 16-50-20(a) ], which provides, in part, that ‘[a]ll appointments shall be effective until adversely acted upon by the Senate,’ and ended Mr. Watkins’s appointment by force of law.”[1] I *467 believe that the trial court was eminently correct in so ruling.
In Dunn, this Court specifically held that action of the Alabama Senate’s Committee on Confirmations rejecting the Governor’s appointments to the Board of Trustees of Alabama State University constituted adverse action by the Senate, which had the effect of divesting the nominees of any authority to assume, or to attempt to assume, trustee positions, and that the. adjournment of the Senate sine die without a floor vote on the Governor’s appointments did not constitute constructive consent by the Senate.[2]
*469 Watkins seeks to distinguish Dunn on the ground that the appointments by the Governor in that case were made while the Senate was in recess and that his appointment was made while the Senate was in session. The trial court, following this Court’s reasoning in Dunn, held that this was a distinction without a difference. I agree. For a thorough discussion of the question of the authority of a gubernatorial appointee whose appointment requires “advice and consent” of the Senate, to serve as a member of a board of trustees of a state educational institution pending that advice and consent, see State ex rel. Little v. Foster, 130 Ala. 154, 30 So. 477 (1901), involving an appointment to the board of trustees of the University of Alabama. Based on the foregoing, I must respectfully disagree with the majority’s granting of Watkins’s motion to stay enforcement of the trial court’s order dissolving the injunction it had previously issued allowing Watkins to continue to serve on the board of trustees of Alabama State University.

. Section 16-50-20(a), in its entirety, provides:
"(a) There is hereby created a board of trustees for Alabama State University, the state educational institution at Montgomery, Alabama. The board of trustees shall consist of two members from the congressional district in which the institution is located and one member from each of the other congressional districts in the state as constituted on October 6, 1975, and who shall reside in that district, four members from the state at large who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adversely acted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor. A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms. The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms. No trustee shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such. No member of the governing board or employee or student of any public postsecondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board. No member shall serve past *467 September 30 following his seventieth birthday.”
(Emphasis added.)

. The Court held:
“The Board contends that the Governor’s appointments of Dunn and Paddock could only, consistent with § 16-50-20(a), become effective upon confirmation by an affirmative vote of the full senate. For this proposition, the Board relies on Sentence Four [of § 16-50-20(a) ]: 'The trustees shall be appointed by the governor, by and with the advice and consent of the senate.... ’ The Board thus argues, in effect, that the adjournment sine die of the senate without a floor vote on the appointments of Dunn and Paddock constituted constructive rejection by the senate. Furthermore, the Board contends that the sole field of operation of § 16-50-25 is to provide the method whereby any vacancy in the office of trustee occurring during the recess of the legislature shall be filled. It maintains that this section unequivocally provides that any appointment by the Governor in the recess of the legislature must be acted on by the Senate in the next session of the legislature; otherwise, it says, the appointment is void.
"The defendants, however, contend that the appointments could only, consistent with § 16-50-20(a), be nullified by a negative vote of the full senate. Relying on Sentence Six, which states: ‘All appointments shall be effective until adversely acted upon by the senate,’ the defendants insist that the negative vote of the Committee and the Committee's subsequent failure to report the appointments to the full senate for consideration did not represent adverse senate action, and, consequently, was ineffective to ‘remove’ Dunn and Paddock from their positions on the Board. Thus, the defendants argue, in effect, that the adjournment sine die of the senate without a floor vote on the appointments of Dunn and Paddock constituted constructive consent by the senate.
“The question presented by the senate's failure to vote on these appointments is one of first impression in this Court. In construing a statute, we are permitted, indeed required, to compare statutes addressing 'related subjects].’ House v. Cullman County, 593 So.2d 69, 75 (Ala.1992) (quoting 2A Sutherland Stat. Const., § 51.02 (4th ed.)). In doing so, we are not 'arbitrarily to disregard the marked differences [and similarities] in terminology’ found in such statutes. 593 So.2d, at 75.
"Particularly relevant in this inquiry is a comparison of the statutes and constitutional provisions creating boards of trustees for other Alabama state colleges and universities. See Ala.Code 1975, § 16-47-30 (University of Alabama); Ala. Const.1901, amend. 161 (Auburn University); § 16-49-20 (Alabama Agricultural and Mechanical University); § 16-51-3 (University of North Alabama); § 16-52-3 (Jacksonville State University); § 16-53-3 (Livingston University); § 16-54-2 (University of Montevallo); § 16-55-2 (University of South Alabama); § 16-56-3 (Troy State University). That these sections vary considerably in terminology, and that the appointment provisions of § 16-50-20 differ markedly from the corresponding provisions in most of the other sections, is apparent from a cursory examination.
"Alabama State University is a predominantly black institution. The only other predominantly black state-supported university is Alabama Agricultural and Mechanical University (Alabama A & M) in Huntsville, Alabama. In 1975, the legislature created the board of trustees for that university. Act No. 198, § 1, 1975 Ala. Acts 683, codified at § 16-49-20, amended by Act No. 89-881, 1989 Ala. Acts 1778. The Act provided in § 1, in material part:
" ‘There is hereby created a Board of Trustees for Alabama Agricultural and Mechanical University, a state land-grant educational institution at Huntsville.... The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate .... All appointments shall be effective upon confirmation by the Senate.’
“(Emphasis added [in Dunn ].) The defendants admit that the clear terms of the legislation creating Alabama A & M University’s board of trustees provide that the trusteeship of those trustees vests only upon confirmation, that is, upon an affirmative vote of the Senate. Therefore, adjournment sine die of the Senate without an affirmative floor vole on the appointments constitutes constructive rejection by the Senate. The Board agrees with this assessment and further contends that although the language in the legislation creating Alabama State University’s trustees is somewhat different, the result intended was the same. In attempting to ascertain the meaning of the statute creating Alabama State University trustees, we find the comparison with the statute creating the trustees of a sister black institution to be of some interest.
“There is a common thread running through the legislation creating the mechanism for appointing trustees of the various state-supported *468 institutions. That thread is that the Governor shall make the appointments, but the appointments must be subject to the advice and consent of the Senate. Obviously, the Governor could not dictate how the Senate is to perform its statutory duty, nor can the Senate dictate to the Governor how he is to perform his. The Senate performs its responsibility by applying its own internal rules of procedure. Before 1951, appointments by the Governor to fill vacancies in trustee positions were submitted to the secretary of the Senate. There they would remain until that body called on the secretary to transmit the appointments to it for action. Beginning in 1951, such recess appointments were sent to the secretary of the Senate and the secretary then submitted them to the Committee on Rules and, recently, to the Committee on Confirmations.
"After the Senate began referring nominations and appointments to a committee, it adopted Senate Rule 33, which prescribed the procedure for handling them. Senate Rule 33 provides:
" 'All nominations and appointments shall be referred to, and be reported from the Committee on Confirmations before consideration by the entire Senate. If the Senate rejects a nomination or appointment, it will either forward its rejection to the Secretary of the Senate who shall forward the rejection to the appointing authority and request a new nominee be submitted, or, in the event that the pertinent statute permits, the Senate may select a substitute appointment.'
Rules of the Senate of the State of Alabama 33 (1991) (emphasis added [inDunn]).
"On September 9, 1991, roughly two months after the trustees in this case were voted on, the Senate passed a resolution that provided:
" 'Whereas by constitutional and statutory mandates, the Senate is required to take action upon various nominations and appointments; and, whereas any action of appointment or nomination by any person, board, committee or any other legal entity that requires senate advice and consent and/or confirmation shall be done in compliance with the Senate Rule Thirty-three; and now therefore, be it resolved by the Senate of Alabama, that failure of the Committee on Confirmations to report a nomination or appointment of any person shall be deemed a rejection by the Senate of such person.’
"Although this resolution was passed after the vote taken on the trustees involved in this litigation, this resolution purportedly put into writing the precedential procedures that had been followed by the Senate in its business for over 40 years. That is, once a nomination failed to get out of the proper committee, that nomination was dead. Furthermore, the attorney general of the State of Alabama, in an attorney general's opinion to Senator Charles D. Langford, August 14, 1991, page 4, opined that such nominations cannot be resubmitted to the Senate in any future legislative session.
"Therefore, we hold that the action of the Committee on Confirmations rejecting the appointments of Dunn and Paddock was an adverse action of the Senate, which had the effect of divesting them of any authority to assume, or attempt to assume, positions of trustees on the Board of Trustees of Alabama State University.
"The defendants have made much of the argument that this rationale allows a committee of the Senate to exercise authority that only the entire Senate can exercise under § 16-50-20(a), which provides that 'all appointments shall be effective until adversely acted upon by the Senate.’ We see a difference between the rejection of a nominee and the approval of a nominee. In order to facilitate the dispatch of business by the Senate, committees were formed to provide certain essential functions. One of the functions of the Committee on Confirmations is to decide which nominees are worthy of consideration by the entire Senate. It is sound policy for the Senate to give the Committee full power to reject a nominee, but under Rule 33, the confirmation of a nominee must be by the full Senate; i.e., the committee cannot confirm a nominee. Rule 33 provides that ‘[a]ll nominations and appointments shall be referred to, and be reported from the Committee on Confirmations before consideration by the entire Senate. If the Senate rejects a nomination or appointment, it will either forward its rejection to the Secretary of the Senate ..., or, in the event the pertinent statute permits, the Senate may select a substitute appointment.' We hold that this Rule requires only that the Committee on Confirmations submit the names of the nominees it approves, not the names of the nominees it rejects.
"Although we have discussed, in some detail, the defendants’ arguments concerning the authority of the Senate's Committee on Confirmations to reject or divest the Governor’s nominees, we have done so because of the extensive elaboration of this point in the brief of the defendants. However, the issue involved here, namely, the right of the trustee to hold office, has been clearly set forth in § 16-50-25. In other words, by virtue of this section, unless the Governor’s appointee is confirmed by vote of the entire Senate in the next session of the legislature, the trustee's appointment is ended by force of law.
"We further point out that our opinion concerning the vitality of the appointments of Dunn and Paddock is consistent with two attorney general's opinions, one to the Hon. Walter E. Peniy, Jr., dated October 29, 1987, and the other to the Hon. Charles D. Langford, dated August 14, 1991, which concluded that ‘an appointment which must be submitted to the Senate expires upon the adjournment of that body if appropriate action has not been taken thereon.’ To conclude as the defendants in this case do, that the adverse action taken by the Committee on Confirmations was, indeed, a constructive consent, is to place an unnatural and strained construction on the word 'con *469 sent,’ which flies in the face of reasonable statutory construction. Western World Insurance Co. v. City of Tuscumbia, 612 So.2d 1159 (Ala.1992); Sullivan v. State Farm Mutual Auto. Insurance Co., 513 So.2d 992 (Ala.1987)."
628 So.2d at 523-25 (emphasis original except as indicated otherwise).