I agree in all respects with the Court's opinion. I write specially, however, to distinguish the statutory scheme under review in this case from the constitutional and statutory provisions regulating appointments of trustees for other state schools and to distinguish this case from Dunn v. Alabama StateUniversity Board of Trustees, 628 So.2d 519 (Ala. 1993).
 I. Comparable Appointment Provisions
The following provisions relate specifically to the appointment of trustees of Alabama's state universities: Ala. Code 1975, § 16-47-30 (University of Alabama); Ala. Const. 1901, amend. 161 (Auburn University); § 16-49-20 (Alabama Agricultural and Mechanical University); § 16-50-20 (Alabama State University); § 16-51-3 (University of North Alabama); §16-52-3 (Jacksonville State University); § 16-53-3 (Livingston University); § 16-54-2 (University of Montevallo); § 16-55-2
(University of South Alabama); and § 16-56-3 (Troy State University). Comparison of these provisions reveals that the operative language of the statute governing appointments to the board of trustees of Alabama State University ("ASU") is unique.
Of the provisions relating to these 10 state universities, the provisions relating to 8 of them, namely, Auburn University, Alabama Agricultural and Mechanical University, the University of North Alabama, Jacksonville State University, Livingston University, the University of Montevallo, the University of South Alabama, and Troy State University, provide, in functionally identical terms, that appointments made during any legislative session shall be made "by the governor, by and with the advice and consent of the senate." The procedure employed under these constitutional and statutory provisions gives the Governor the power to make an appointment, or, in effect, a nomination, that must be confirmed or approved by the Senate before the nominee or appointee becomes appointed. As to the other two institutions, namely, the University of Alabama and ASU, the statute relating to the University of Alabama provides that the position of trustee is to be filled by a vote of the remaining trustees, with the trustee-elect holding office "until his confirmation or rejection by the Senate." Section 16-47-30. Of the trustees of these institutions that are appointed during a legislative session, only those of ASU hold office "until adversely actedupon by the Senate." Section 16-50-20(a) (emphasis added).
Unquestionably, the statutory procedure under which ASU trustees hold office "until [the appointment is] adversely acted upon by the Senate" is a substantial departure from the statutory and constitutional processes governing the appointment of trustees at Alabama's other state universities. "[W]here there is a 'material alteration in the language used in the different [sections], it is to be inferred' that the alterations were not inadvertent." House v. Cullman County,593 So.2d 69, 75 (Ala. 1992) (emphasis added). "This Court is not permitted to 'legislate by construction.' " Id. Therefore, I cannot conclude, as the Court does, that this phrase, which is unique among the provisions governing appointments to the boards of Alabama's state universities, has no field of operation. In other words, the Legislature must have intended by this additional phrase to distinguish the procedure at ASU from the procedures applicable in regard to the other universities. This peculiar phrase was the subject of the Court's attention in Dunn v. Alabama State University Board ofTrustees, 628 So.2d 519 (Ala. 1993).
 II. Dunn v. Alabama State University Board of Trustees
In Dunn, we considered this provision in the context of the appointments of "Ross Dunn and Jo Ann Paddock to the board of trustees of ASU." 628 So.2d at 521. Their appointments were referred to the Senate Committee on Confirmations (the "Committee"), which "voted against the appointments." Id.
(emphasis added). When the Committee "declined to 'report' the appointments *Page 343 
to the full senate for a vote," that body adjourned sine die
without "further action on the appointments." Id. Thus, the issue we considered in Dunn was whether the Committee'srejection of the appointments constituted "adverse act[ion]" within the meaning of that phrase in § 16-50-20(a). We held that it did. Dunn, 628 So.2d at 525.
This case, however, involves no adverse action, either by the whole Senate or by the Committee. On the contrary, the whole Senate never considered the nomination of Donald Watkins, and the Committee voted to approve his nomination. This case is unlike Dunn in that in this case the only action taken in the Senate was favorable — not adverse; it is adverse action that the statute requires to invalidate a nomination. Thus, Dunn is distinguishable from this case.
In this connection, I conclude that, in regard to the appointment process under § 16-50-20(a), adjournment sine die
is not adverse action — it is merely inaction. In that respect, the process is not, as was suggested by ASU during oral argument, analogous to the process by which a bill becomes law. In the latter case, Ala. Const. 1901, § 63, provides that "no bill shall become a law, unless . . . a majority of eachhouse be recorded . . . as voting in its favor." (Emphasis added.) See also Ala. Const. 1901, § 125 ("Every bill which shall have passed both houses of the legislature, except as otherwise provided in this Constitution, shall be presented to the governor. . . ."). Obviously, a bill is of no force or effect until the extensive legislative process expressly set forth in the Constitution has been exhausted.
Section 16-50-20(a), however, contemplates that an in-session gubernatorial appointment is effective until, and unless, there is affirmative, adverse action by the Senate. In this connection, it was conceded by all parties that Watkins assumed the duties of trustee immediately upon his appointment by the Governor and that he was entitled to do so. Thus, the process governed by § 16-50-20(a) has no functional similarity to the ordinary process of enacting legislation.
Also inapplicable to this case is James v. Langford,695 So.2d 1158 (Ala. 1997), which involved the appointment of AuburnUniversity trustees, pursuant to Ala. Const. 1901, Amend. No. 161. As I pointed out in Part I of this writing, Amend. No. 161 does not contain the unique language involved in this case. For these reasons, I agree that the Senate's adjournment sine die, without having confirmed Watkins's appointment by an affirmative vote, does not invalidate his appointment.
The question whether the Senate can again consider the appointment is not ripe for decision in this case. The issue presented has been resolved without our addressing the procedure of the Senate; thus, there is no basis for the Court to reach and address the question whether the Senate can again consider this appointment. However, Watkins contended in the trial court that there is no way for the Senate to again bring up his name for a vote in a subsequent session, and that he therefore can now serve out the remainder of the term to which he was appointed. I do not view our opinion today as deciding that issue. Nonetheless, I believe Watkins was quite correct in stating at oral argument in this Court that the language of the statute does not prevent the Senate from again considering the appointment.