Lister Hill Proctor appeals from an order of the Montgomery Circuit Court issuing a writ of quo warranto to Bob Riley, in his capacity as Governor of the State of Alabama and as ex officio president of the Board of Trustees for Alabama State University, and Oscar Crawley. We affirm.
 Facts and Procedural History
In May 2002, a vacancy occurred on the Board of Trustees for Alabama State University ("the Board"). Exercising his power under Ala. Code 1975, § 16-50-25, then Governor Don Siegelman, on May 10 while the Legislature was in recess, appointed Proctor to fill the vacancy. As a "recess appointee," Proctor's term would last only until "the next session of the Legislature, when the vacancy [would] be filled by the Governor by and with the consent of the Senate." Ala. Code 1975, § 16-50-25.
In November 2002, Bob Riley defeated Siegelman in the gubernatorial election. On January 16, 2003, four days before Riley's inauguration, the Senate convened for its organizational session, pursuant to Amendment No. 57 to the Alabama Constitution of 1901. During this session, then Governor Siegelman nominated Proctor to continue serving on the Board as a trustee. The nomination was received in the office of the secretary of the Senate on January 17, 2003. It was never given a first reading on the floor of the Senate. After the Senate completed its organizational session, it adjourned sine die, without acting upon then Governor Siegelman's nomination of Proctor.
On January 20, 2003, Governor Riley was inaugurated. Shortly after his inauguration, he wrote the secretary of the Senate, McDowell Lee ("Secretary Lee"), asking him to return all nominations made by then Governor Siegelman that had not yet received a first reading. Proctor's nomination, along with several other nominations, was sent to Governor Riley.
On March 3, 2003, the Senate convened its regular session. On March 10, Senator E.B. McClain, chairman of the Senate committee on confirmations, introduced a resolution attempting to bring before the Senate the nominations made by Governor Siegelman before he left office. A senator objected and pursuant to Senate rules the resolution was referred to the Senate committee on rules, where it was never acted upon.
Later in the regular session, on June 11, 2003, Governor Riley sent the Senate a letter nominating Oscar Crawley to fill the seat to which then Governor Siegelman had appointed Proctor. On June 12, the Senate committee on confirmations and a unanimous Senate approved Crawley's nomination. On June 16, 2003, the Senate adjourned sine die, ending the regular session.
After he was confirmed by the Senate, Crawley attempted to participate in a meeting of the Board. On January 9, 2004, Crawley arrived at the meeting, only to be denied participation by majority vote of the Board; he was physically escorted from the meeting by the Alabama State University campus police. The Board continues to refuse to seat Crawley and continues to regard Proctor as a lawfully appointed member of the Board. Proctor actively participates in the business that comes before the Board.
On January 16, 2004, Governor Riley and Crawley filed an action in the Montgomery Circuit Court seeking a temporary *Page 788 
restraining order, a preliminary injunction, and a writ of quo warranto. On January 20, 2004, Senator McClain filed a motion seeking to intervene in that action as a plaintiff; that motion was granted on April 27. Senator McClain, in his role as chairman of the Senate committee on confirmations, then filed a complaint in intervention stating that because then Governor Siegelman's nomination of Proctor was never given a first reading in the Senate, his nomination was never officially before the Senate.
Also on April 27, 2004, the Montgomery Circuit Court conducted a hearing in the action. At the hearing, the parties stipulated to certain facts, submitted a deposition taken of Secretary Lee on the matters in question, and presented arguments supporting their respective positions.
On May 26, 2004, the court issued a judgment declaring that Crawley was the lawful appointee to the Board and enjoining both Proctor and the Board from interfering with Crawley's exercise of his rights and responsibilities as a member of the Board. Proctor timely appealed, and only he, Governor Riley, and Crawley have filed briefs in this case.
 Standard of Review
Where all pertinent issues before the appellate court are legal in nature, we review the trial court's order de novo. Goodwyn,Mills Cawood, Inc. v. Markel Ins. Co., [Ms. 1021820, July 16, 2004] ___ So.2d ___, ___ (Ala. 2004).
 Analysis
On appeal, Proctor argues that his nomination became a valid appointment when, after he was nominated during the Senate's organizational session, the Senate adjourned that session sinedie, without acting upon his nomination. He contends that the statutes governing Alabama State University, Ala. Code 1975, §§16-50-1 et seq., provide a procedure pursuant to which a nominee to the Board may be rejected only if the Senate undertakes affirmative action to reject that nominee. Without such affirmative action, Proctor asserts, his nomination became an appointment when the Senate adjourned the organizational sessionsine die.
Proctor directs this Court's attention to Ala. Code 1975, §§16-50-20(a) and -25. Section 16-50-20(a) provides, in pertinent part:
 "There is hereby created a board of trustees for Alabama State University. . . . The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate. . . . All appointments shall be effective until adversely acted upon by the Senate."
Section 16-50-25 provides:
 "Any vacancy in the office of trustee occurring during the recess of the Legislature shall be filled by appointment of the Governor from the same category in which the vacancy occurred. Such appointee shall hold office until the next session of the Legislature, when the vacancy shall be filled by the Governor by and with the consent of the Senate."
Proctor notes that he was appointed by then Governor Siegelman pursuant to Ala. Code 1975, § 16-50-25, during the recess of the Legislature. He contends that pursuant to § 16-50-25 he held office "until the next session of the Legislature," which, he argues, was the organizational session convened on January 16, 2003. His appointment then lapsed and the seat again became vacant, his argument continues, clearing the way for then Governor Siegelman to nominate him for a full term on the Board. At that point, Proctor contends, the burden was fully upon the Senate to "adversely act upon" his nomination. Because it did not do so, he asserts, his nomination became an effective appointment. *Page 789 
Governor Riley and Crawley agree with Proctor that if the Senate does not "adversely act" on a nomination to a position on the Board the nomination becomes an appointment. However, they note, Proctor's argument presupposes that his nomination by then Governor Siegelman was properly before the Senate during its organizational session. That proposition cannot be correct, say Governor Riley and Crawley, in view of the provisions of the Alabama Constitution of 1901 relating to organizational sessions of the Legislature.
The Senate's organizational session is mandated by Amendment No. 57 to the Alabama Constitution of 1901. That amendment provides that each house of the Legislature is to meet in an organizational session on the second Tuesday in January after the election of the senators and the representatives. The amendment further admonishes:
 "No business can be transacted at such sessions except the organization of the legislature, the election of officers, the appointment of standing committees of the senate and the house of representatives for the ensuing four years, . . . the opening and publication of the returns and the ascertainment and declaration of the results of [various elections for state officers], the election of such officers in the event of a tie vote, the determination of contested elections for such offices, the judging of the election returns and qualification of the members of the legislature, and the inauguration of the governor and the other elected state officers whose terms of office are concurrent with that of the governor."
(Emphasis added.) It is undisputed that nominations to the Board do not fall within any of the excepted categories.
Governor Riley and Crawley argue that the Senate was without power to consider Proctor's nomination during its organizational session. They argue that because Amendment No. 57 bars the Senate from transacting any business other than those items outlined in the amendment, the Senate could not render its "advice and consent" pursuant to Ala. Code 1975, § 16-50-20(a); thus, they argue, no nomination to the Board could occur during the organizational session.
Secretary Lee has been the secretary of the Senate for over 40 years; both parties have stipulated that he is the foremost living expert on the procedural rules of the Alabama Senate. In his deposition, Secretary Lee concurred with the argument advanced by Governor Riley and Crawley. He testified that the Senate is not able to consider a nomination during its organizational session.
Proctor counters these arguments by emphasizing the fact that the statute governing vacancies on, and recess appointments to, the Board, Ala. Code 1975, § 16-50-25, states that a recess appointment shall last until "the next session of the Legislature," which he argues happened in this case to be the organizational session. When the vacancy was created, his argument proceeds, the vacancy statute called upon then Governor Siegelman to nominate someone to serve on the Board on a permanent basis.
The issue before us is whether then Governor Siegelman's nomination of Proctor under the auspices of Ala. Code 1975, §16-50-20(a), made during an organizational session of the Legislature, is effective. To determine that issue, we must examine the interplay of both § 16-50-20(a) and § 16-50-25. First, we should "consider the statute as a whole and . . . construe the statute reasonably so as to harmonize [its] provisions." McRae v. Security Pac. Hous. Servs., Inc.,628 So.2d 429, 432 (Ala. 1993). Additionally, "[s]ections of the Code originally constituting a single act must be read in parimateria in *Page 790 
order to `produce a harmonious whole.'" Ex parte Jackson,625 So.2d 425, 428 (Ala. 1992) (quoting 2A Norman J. Singer,Sutherland Statutory Construction § 46.05 (5th ed. 1993)). Both § 16-50-20 and § 16-50-25 were proposed by the same act of the Legislature, Act. No. 790, Ala. Acts 1975, and both were amended by Act No. 573, Ala. Acts 1983. Thus, they are to be read inpari materia.
We have previously considered the interaction of the provisions within § 16-50-20(a) and between that section and § 16-50-25 inWatkins v. Board of Trustees of Alabama State University,703 So.2d 335 (Ala. 1997). There we stated:
 "[Section] 16-50-20(a) and § 16-50-25[, Ala. Code 1975,] should be construed in pari materia. . . . [T]hese sections create a procedure for an appointment process that should operate as follows: 1) if a vacancy on the Board occurs while the Legislature is not in session, the Governor has the authority to make an interim appointment, which ends when the Legislature reconvenes (§ 16-50-25); 2) the termination of the interim appointment creates a new vacancy on the Board; 3) if a vacancy on the Board occurs while the Legislature is in session, whether by the termination of an interim appointment or otherwise, the procedure for filling the vacancy is set out in § 16-50-20(a); and 4) the Governor's `in-session' appointee begins to serve immediately, before the end of the legislative session, and continues to serve unless the Senate adversely acts upon the appointment (§ 16-50-20(a)). After carefully examining § 16-50-20(a) and § 16-50-25, we conclude, for the reasons that follow, that this is a correct construction of these two sections.
 "The fourth sentence of § 16-50-20(a) provides, in pertinent part, that `[t]he trustees shall be appointed by the Governor, by and with the advice and consent of the Senate.' Section 16-50-25 provides, in pertinent part, that an interim appointee `shall hold office until the next session of the Legislature, when the vacancy shall be filled by the Governor by and with the consent of the Senate.' These two sections read together, as they must be, in accordance with our well-established rules of statutory construction, see McRae v. Security Pacific Housing Services, Inc., 628 So.2d 429 (Ala. 1993) (the statute as a whole must be considered and construed reasonably so as to harmonize its provisions), clearly require that any appointment to the Board made during a legislative session be by and with the consent of the Senate. If this were the only language in these two sections dealing with the Senate's role in the appointment process, we would be constrained to hold that James v. Langford, 695 So.2d 1158 (Ala. 1997), controls and that no appointment to the Board would be effective until confirmation by the full Senate. However, unlike the constitutional provision at issue in James v. Langford, § 16-50-20(a), which provides the basic procedural formula for making an appointment to the Board, contains the following sentence: `All appointments shall be effective until adversely acted upon by the Senate.' This language, which appears as the sixth sentence in § 16-50-20(a), follows two sentences after the sentence that provides for an appointment to be made `by and with the advice and consent of the Senate.' These two sentences — the fourth and the sixth — are clearly at odds with each other and create an ambiguity within § 16-50-20(a) as to the Senate's proper role in the appointment process. The fourth sentence contemplates that there can be no valid appointment without Senate confirmation; the sixth sentence contemplates an appointment by the Governor without Senate *Page 791 
confirmation. In essence, the sixth sentence contemplates a procedure whereby the Governor has the authority to make an appointment to the Board and the Senate has the authority to nullify that appointment by `adversely act[ing] upon [it].' Applying well-established rules of statutory construction, basic to which is effectuating legislative intent, we agree with the parties that § 16-50-20(a) provides a mechanism whereby the Senate's supervisory role in the appointment process (its role of providing `advice' and `consent') is performed by virtue of its exercise of what amounts to a veto power over the Governor's appointment. We cannot conclude that the sixth sentence, providing that `[a]ll appointments shall be effective until adversely acted upon by the Senate,' was mere surplusage, given the fact that the Legislature is quite adept at creating an appointment procedure requiring an affirmative vote of the Senate to effectuate an appointment to a public university's board of trustees. See Dunn v. Alabama State University Board of Trustees, 628 So.2d 519 (Ala. 1993), discussing the creation of a board of trustees for Alabama A M University. Instead, we must give effect to every word in § 16-50-20(a), if possible, and that can be done, in keeping with our understanding of legislative intent, by holding that the sixth sentence modifies and controls the fourth sentence. See Alabama State Board of Health ex rel. Baxley v. Chambers County, 335 So.2d 653 (Ala. 1976) (where two sections or provisions of an act are conflicting, the last in order of arrangement controls)."
703 So.2d at 338-39.
Thus, an appointment intended to be of definite duration, as opposed to a temporary recess appointment, must be "by and with the advice and consent of the Senate" (Ala. Code 1975, §16-50-20(a)) or "by and with the consent of the Senate" (§16-50-25). A recess appointment lasts only until the next session of the Legislature "when the vacancy shall be filled by the Governor by and with the consent of the Senate." Ala. Code 1975, §16-50-25. (Emphasis added.) Manifestly, the Legislature did not intend to trigger a termination of a recess appointment by convening a session at which it could not constitutionally consent to, by either approving or rejecting, a replacement appointment.
Reading together the provisions of § 16-50-20(a) specifying that "[t]he trustees shall be appointed by the Governor, by and with advice and consent of the Senate," but providing that those "appointments shall be effective until adversely acted upon by the Senate," and reading those provisions in pari materia with the provision of § 16-50-25 that the succeeding appointment be "by and with the consent of the Senate," we conclude that the Legislature intended that "the next session of the Legislature" that would effect the termination of a recess appointment be one at which the Legislature could constitutionally consent to, or reject, the replacement appointment. To read the statutes otherwise would be to assume that the Legislature intended a hiatus between the termination of the recess appointment and the appointment, by and with the advice and consent of the Senate, of a member of the Board vested with the remainder of the unexpired term.
 Conclusion
Because Proctor's nomination came during an organizational session at which only certain actions by the Senate, not including action upon a nomination to the Board, could constitutionally be taken, the Senate could not constitutionally act upon Proctor's nomination, either to reject him, to confirm him, or simply to do nothing and *Page 792 
thereby allow his appointment to be validated for want of adverse activity. Therefore, Proctor's nomination tendered to the organizational session of the Legislature was not a nomination pursuant to § 16-50-20(a) but was at most another recess appointment pursuant to § 16-50-25. Proctor was never again nominated by either then Governor Siegelman or Governor Riley.
When the Legislature convened in regular session on March 3, 2003, Proctor's recess appointment lapsed, and a vacancy on the Board was thereby created. Governor Riley then duly nominated Crawley, and he was unanimously confirmed by the Senate. Thus, only Crawley is an appointee to the Board; Proctor has no right to that position. Because we conclude that Proctor was not appointed to the Board and that Crawley was, we affirm the trial court's judgment.
AFFIRMED.
NABERS, C.J., and SEE, BROWN, and STUART, JJ., concur.