Tim O. COOK, Appellant,

v.

Bruce M. BOTELHO, Attorney General
of the State of Alaska, Appellee.

The ALASKA STATE LEGISLATURE,
Appellant,

v.

Bruce M. BOTELHO, Attorney General
of the State of Alaska, Appellee.

Nos. S–7253, S–7263.

Supreme Court of Alaska.

Aug. 2, 1996.

Wevley William Shea, Anchorage, for Tim O. Cook.

Pamela Finley, Legislative Counsel, Legislative Affairs Agency, Juneau, for Alaska State Legislature.

David T. Jones, Assistant Attorney General, and Bruce M. Botelho, Attorney General, Juneau, for Appellee.

Before COMPTON, C.J., and RABINOWITZ, MATTHEWS, EASTAUGH and FABE, JJ.

## OPINION

EASTAUGH, Justice.

### I. INTRODUCTION

We are here required to construe the constitutional allocation of the power to appoint and remove members of regulatory commissions, and the constitutional and statutory provisions governing appointments during a recess of the legislature. The superior court entered summary judgment in favor of Attorney General Bruce Botelho, holding that Tim O. Cook does not lawfully hold the office of Alaska Public Utilities Commissioner. We reverse.

### II. FACTS AND PROCEEDINGS

In October 1994 Governor Walter Hickel named Cook to a vacant position on the Alaska Public Utilities Commission (APUC). The Alaska State Legislature was then in recess. By letter, the governor's office informed Cook that he was appointed "effective October 31, 1994, for a term ending October 31, 2000." Cook took the oath of office on

October 31, 1994, received a Certificate of Commission, and began performing his duties as a member of the APUC.

On December 5, 1994, Tony Knowles took office as Governor of Alaska, succeeding Walter Hickel in that position. The Nineteenth Legislature convened on January 16, 1995. On February 13, 1995, Governor Knowles informed Cook by letter that he would not be presenting Cook's name to the legislature for confirmation, and requested Cook's "immediate resignation" by February 27, 1995. Governor Knowles simultaneously notified the legislature that he understood it had referred all of former Governor Hickel's recess appointments to various committees for confirmation hearings. Governor Knowles further advised the legislature that he had not presented to the legislature for confirmation the names of any of those persons, and that he viewed the Senate's consideration of those appointments "to be of no legal effect."

Cook did not resign. On February 15 the legislature in joint session voted to confirm Cook's appointment, among other appointments made by Governor Hickel before the legislative session began. In early June, Governor Knowles's Chief of Staff asked Cook to vacate his seat on the APUC, stating that

> [b]ecause Governor Knowles withdrew your interim appointment and did not present your name to the legislature for confirmation, the legislature could not validly confirm your interim appointment as commissioner. Therefore, your interim appointment terminated no later than May 16, 1995, when the legislature adjourned without having validly confirmed that appointment.

Cook remained in office.[1]

Several days later the attorney general filed an action against Cook for usurpation of office under AS 09.50.310(1), and for a declaratory judgment that the legislature's attempt to confirm Cook was invalid. Cook counter-claimed, asserting that he was legally in office and that Governor Knowles and

1. In late June 1995 Governor Knowles appointed G. Nanette Thompson to the position claimed by Cook.

the attorney general had committed tortious conduct in attempting to remove him. The attorney general moved for summary judgment. The legislature intervened as a defendant, and moved for a partial summary judgment dismissing the attorney general's claims.

The superior court granted the attorney general's motion, holding that under AS 39.05.080 "[a] recess appointment terminates thirty days after the legislature convenes. . . . [An] appointee could only hold office for a limited period of time before either facing the confirmation process (if the governor decided to present the appointee's name to the legislature) or ouster by law under AS 39.05.080." Therefore, the superior court determined that "Mr. Cook's term ended when his name was not presented to the legislature for confirmation within 30 days of the convening of the legislature." The court also held that "the last act in the appointment of an APUC commission member is presentment to the legislature by the governor. Until the governor has presented an appointee's name to the legislature, the governor has the right to change his mind and select someone else." (Citations and footnotes omitted.)

The court accordingly entered a final judgment in favor of the attorney general under Alaska Rule of Civil Procedure 54(b). Cook and the legislature appeal.

## III. DISCUSSION

Under article III, section 26 of the Alaska Constitution, members of commissions such as the APUC "shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session." See Bradner v. Hammond, 553 P.2d 1, 3 (Alaska 1976) (Section 26 "vests the power of appointment in the governor and the power to confirm in the legislature in joint session."). Section 26 further gives the legislature the power to restrict by law the removal of such members. Alaska Const. art. III, § 26; see also AS 42.05.035 ("The governor may remove a commissioner from office by and with the consent of a majority of the legislature."). Article III, section 27 of the Alaska Constitution governs recess appointments. "The governor may make appointments to fill vacancies occurring during a recess of the legislature, in offices requiring confirmation by the legislature. The duration of such appointments shall be prescribed by law." Alaska Const. art. III, § 27.[2]

This case presents three major issues regarding the constitutional and statutory provisions governing appointments. First, this court must determine at what point the governor may no longer withdraw an appointee without complying with the statutes governing removal. Second, we must decide whether the legislature may confirm an appointee absent the incumbent governor's presentment of the appointee's name under AS 39.05.080. The final issue concerns the duration of appointments made while the legislature is in recess; the attorney general argues that such appointments automatically terminate thirty days after the legislature reconvenes, while Cook and the legislature contend that recess appointments are no different from appointments made while the legislature is in session.

 The resolution of these questions demands constitutional and statutory interpretation. This court applies its independent judgment to constitutional issues, adopting "a reasonable and practical interpretation in accordance with common sense" based upon "the plain meaning and purpose of the provi-

---

2. Article III, section 26 is the general appointment provision for boards and commissions.

 **Boards and Commissions.** When a board or commission is at the head of a principal department or a regulatory or quasi-judicial agency, its members shall be appointed by the governor, subject to confirmation by a majority of the members of the legislature in joint session, and may be removed as provided by law. They shall be citizens of the United States. The board or commission may appoint a prin-

cipal executive officer when authorized by law, but the appointment shall be subject to the approval of the governor.
 Article III, section 27 of the Alaska Constitution states in full:
 **Recess Appointments.** The governor may make appointments to fill vacancies occurring during a recess of the legislature, in offices requiring confirmation by the legislature. The duration of such appointments shall be prescribed by law.

sion and the intent of the framers." *Arco Alaska, Inc. v. State,* 824 P.2d 708, 710 (Alaska 1992) (citing *Kochutin v. State,* 739 P.2d 170, 171 (Alaska 1987)). We also interpret statutes according to our independent judgment, giving "effect to the intent of the lawmaking body 'with due regard for the meaning that the language in the provision conveys to others.'" *Marlow v. Municipality of Anchorage,* 889 P.2d 599, 602 & n. 1 (Alaska 1995) (quoting *Foreman v. Anchorage Equal Rights Comm'n,* 779 P.2d 1199, 1201 (Alaska 1989)).[3]

## A. *Removal of Appointees*

The governor's power to reconsider Cook's appointment ended when the governor committed the last act required to complete the executive function of appointment. The superior court held that presentment of the appointee's name to the legislature is the last act completing appointment. We hold that the appointment was complete no later than when Cook assumed the powers of office.

The United States Supreme Court has stated:

> The appointment being the sole act of the President, must be completely evidenced, when it is shown that he has done every thing to be performed by him.
>
> . . . .
>
> Some point of time must be taken when the power of the executive over an officer, not removable at his will, must cease. That point of time must be when the constitutional power of appointment has been exercised. And this power has been exercised when the last act, required from the person possessing the power, has been performed.

*Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 157, 2 L.Ed. 60 (1803) (holding that under federal law, the president may not withhold the commission of an appointed and confirmed officer). *See also Division of Elections v. Johnstone,* 669 P.2d 537, 540 (Alaska 1983), *cert. denied sub nom. Denardo v. Johnstone,* 465 U.S. 1092, 104 S.Ct. 1580, 80 L.Ed.2d 114 (1984) (applying last act analysis to determine when appointment occurs).

Courts have uniformly held that an executive's power to reconsider an appointment ends when the executive takes the last act required to complete the appointment process. *Marbury,* 5 U.S. at 162; *In re Comm'n on Governorship of Cal.,* 26 Cal.3d 110, 160 Cal.Rptr. 760, 767, 603 P.2d 1357, 1365 (1979); *McChesney v. Sampson,* 232 Ky. 395, 23 S.W.2d 584, 587 (1930); *State v. Essling,* 268 Minn. 151, 128 N.W.2d 307, 312–13 (1964); *Burke v. Schmidt,* 86 S.D. 71, 191 N.W.2d 281, 284 (1971).

The rule established by cases considering the issue is that the last act of the executive is the act which places the appointee in office.

> If appointment by the governor had had the effect of placing [the appointee in office] and authorizing him to perform its functions, there could be no question but that the proposition that the governor had exhausted his power in making the appointment and could not withdraw it would apply.

*McBride v. Osborn,* 59 Ariz. 321, 127 P.2d 134, 136 (1942). *See also In re Comm'n on Governorship of Cal.,* 160 Cal.Rptr. 760, 603 P.2d at 1365 (holding that governor may withdraw appointee where appointment "does not complete the appointive process or confer even an interim right to assume office"); *McChesney,* 23 S.W.2d at 587 ("[U]nder our system the appointee of the Governor takes the office, enters upon the performance of its duties, and is charged with responsibility. He holds then subject alone to the action of the Senate."); *Essling,* 128 N.W.2d at 313 (holding that last act of executive is act that "vest[s the appointee] with the powers and duties of the office"); *Burke,* 191 N.W.2d at 284 (holding that gubernatorial power to withdraw depends upon "whether the action of the executive is complete and places the appointee in office without further action").

---

3. Cook states that "certain factual disputes precluded summary judgment for the Attorney General." However, Cook makes no further reference to such factual disputes in his brief. Such cursory treatment is inadequate to raise an issue on appeal. *See Katmailand, Inc. v. Lake & Peninsula Borough,* 904 P.2d 397, 402 n. 7 (Alaska 1995).

An appointee to the APUC may perform the duties of office once the governor designates the individual for office, and the appointee takes the oath of office and receives a commission. Alaska Statute 39.05.080(4) provides that "[p]ending confirmation or rejection of appointment by the legislature, persons appointed shall exercise the functions, and have the powers and be charged with the duties prescribed by law for the appointive positions or membership." Cook began to exercise the powers of a member of the APUC when he took the oath of office and received his commission. At that point the executive had no power to reconsider the appointment.[4]

The attorney general argues that an appointment is not complete until the governor presents the appointee's name to the legislature under AS 39.05.080(1).[5] However, Alaska Statute 39.05.080 sets the procedural steps to be followed during the legislative function of confirmation; it does not establish the substantive elements of the executive act of appointment. Presentment requires the governor to notify the legislature of his appointments; AS 39.05.080(1) states that the governor "shall" present the names of "persons appointed . . . who have not previously

been confirmed. . . ." Presentment thus constitutes a procedure following appointment and facilitating legislative confirmation. Presentment is not part of the appointment.

Having made the appointment, AS 39.05.080(1) obliges the executive to apprise the legislature of that fact. *See* Alaska Const. art. III, § 16 ("The governor shall be responsible for the faithful execution of the laws."). The statute does not give the governor the option of refusing to present the name of an appointee. The governor's appointment was complete no later than when Cook took office.[6] *See Division of Elections v. Johnstone*, 669 P.2d at 539 (plain meaning of "appoint" is to designate for office). This being so, Governor Knowles could not remove Cook from office without complying with the statutes governing removal from the APUC. AS 42.05.035 (removal of APUC members requires consent of legislature). *Compare McChesney*, 23 S.W.2d at 587 ("In all jurisdictions where appointment to office is regarded as an executive function, as here, an appointment to office once made is incapable of revocation or cancellation by the appointing executive in the absence of a statutory or constitutional power of removal.")

---

4. The fact that the appointee's right to the office is contingent upon confirmation by the legislature does not change this result. Confirmation occurs after appointment.

 [T]he governor's part of the appointive process is to appoint a person to the board. . . . The senate has the right and power to confirm the appointment in order to fully complete the appointive process but, under the appointment procedures followed, this power to confirm actually is more in the nature of a power to veto the appointment after the fact. Neither confirmation by the senate nor further action by the governor was necessary to vest respondent with the powers and duties of the office. He actually performed those duties for several months and was empowered to do so until the senate directly, or indirectly, rejected his appointment or he was removed for cause.

 *State v. Essling*, 268 Minn. 151, 128 N.W.2d 307, 313 (1964). *Cf. Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 161, 2 L.Ed. 60 (1803) ("The appointment is the sole act of the President; the acceptance is the sole act of the officer, and is, in plain common sense, posterior to the appointment. As he may resign, so may he refuse to accept: but neither the one, nor the other, is capable of rendering the appointment a nonentity.").

5. AS 39.05.080(1) states in full:

 The appointing authority shall, within 30 days of the convening of the legislature in regular session, present to the legislature for confirmation the names of the following persons: (A) persons appointed to a position or membership who have not previously been confirmed by the legislature or either house of it; (B) persons appointed subject to confirmation to fill an existing position or membership vacancy; (C) persons appointed subject to confirmation to fill a position or membership the term of which shall expire before July 2, following the session of the legislature. If an appointment is made after the deadline but while the legislature is in session, the appointing authority shall, within five calendar days after the appointment is made, present to the legislature for confirmation the name of the person appointed. The deadline may be extended by the legislature by the approval of a concurrent resolution.

6. We need not and do not decide whether the outcome would be different if Governor Hickel had limited the term of Cook's appointment when he designated Cook for office. Here Governor Hickel clearly appointed Cook to a full term as APUC commissioner.

*with Bradner,* 553 P.2d at 6 ("[W]e conclude that the appointment of executive officers is an executive function. . . .").

## B. *Confirmation*

 The attorney general also argues that the legislature lacked the power to confirm Cook, because Governor Knowles never presented Cook's name to the legislature as required by AS 39.05.080. We hold that the legislature may confirm an appointee, once the governor's appointment is complete, without awaiting communication of the appointment from the executive. *McChesney,* 23 S.W.2d at 586; *People v. Shawver,* 30 Wyo. 366, 222 P. 11, 25 (1924).

As discussed above, AS 39.05.080 does not define the substantive elements of executive appointments, but rather establishes the procedures by which appointees are confirmed. The presentment process simply furnishes a means by which the legislature may be apprised of the governor's actions. Section .080(1) imposes a duty on the governor to present names; it does not give the governor power to remove an appointee from office by simply failing to carry out the presentment duty imposed by section .080(1). While the statute provides that "the legislature shall, before the end of the session in which the appointments are presented, in joint session assembled, act on the appointments," AS 39.05.080(2)(B), it does not prevent the legislature from exercising its constitutionally granted confirmation authority just because the governor declines to present a name.

The constitution delegates a part of the appointment power to the legislature. *Bradner,* 553 P.2d at 7. This delegation implies both a power, and a duty, to investigate the status of appointed offices. As stated by the Kansas Supreme Court:

> Under all the circumstances, the Senate cannot shut its eyes to the facts as to whether the respective offices are filled; whether they are functioning under the law, or whether there is a vacancy therein. The Governor's communication sending the appointment to the Senate raises the question: What is the status to which the appointment refers? That question the Senate is obliged to determine for itself, and to make its own investigation in order to discharge its duty. If the investigation reveals the fact that the Governor has already made an appointment of an officer who has qualified, is in possession, is discharging the duties, and is receiving the emoluments of the office, the Senate must determine the course it will pursue in the light of that fact. The Senate, which has official knowledge of all of the acts of another state department, may not close its eyes to an existing fact merely because the executive has failed to transmit a communication giving it the advice. The fact that the Senate is called upon to consent to or confirm appointments presupposes an investigation upon which to base its judgment as to whether or not it should confirm or reject the named appointee. It is a matter of common knowledge that the Senate of Kansas, likewise the Senate of the United States, may, and frequently does, investigate the character, fitness, and ability of the appointee submitted for its consideration. The Senate must be permitted to investigate on its own initiative, and without communication from the Governor, the status of offices; otherwise the Governor could fill and refill them at his pleasure by simply failing to advise the Senate. No other branch of the government exercises the power of investigation to the same degree as does the legislative branch. . . . We conclude that the Senate did not go beyond its powers in making the investigation concerning the offices held by the defendants, and, having satisfied itself, that it could properly exercise its judgment thereon. While it is the usual and customary courtesy of the executive to transmit such facts to the Senate, we believe it the better view to hold that the Senate may, on its own initiative, if it so desires, ascertain the facts upon which to base its deliberate and final judgment in confirming or rejecting appointees of the Governor.

*Barrett v. Duff,* 114 Kan. 220, 217 P. 918, 925–26 (1923). *See also Shawver,* 222 P. at 25.

We find the reasoning of the Kansas court convincing. The legislature holds broad

powers of investigation necessary to its law-making activities. The constitutional grant of the confirmation power implies a coincident power and duty to investigate the status of the appointed offices as well as the qualifications of the individuals appointed to those offices. Governor Hickel appointed Cook to the APUC, "for a term ending October 31, 2000."[7] Once the governor completed Cook's appointment by placing him in office, the legislature was entitled to take notice of that fact and confirm or reject the appointee.

The presentment provision in AS 39.05.080(1) simply provides one means by which the legislature has assured itself that it will be informed of gubernatorial appointments. It does not deprive the legislature of other means of investigation into the status of those appointments. Nothing in the constitution or AS 39.05.080 suggests that the legislature is without power to inform itself of gubernatorial appointments and confirm completed appointments without communication from the executive.

We hold that once an appointment is completed, the legislature may confirm the appointee without awaiting presentment by the governor. Therefore the governor's failure to present Cook's name to the legislature did not prevent the legislature from validly confirming Cook.

### C. Duration of Recess Appointments

■ The superior court held that Cook's appointment ended thirty days after the legislature convened, based upon its conclusion that AS 39.05.080(1) establishes this term for interim appointments. We disagree. The Alaska Constitution and the appointment statutes do not prevent the executive from appointing an APUC member to a full term while the legislature is in recess, nor do they prevent the legislature from confirming such an appointee. Consequently, we hold that Cook was validly appointed and confirmed to a full term as an APUC member.

#### 1. The constitutional framework

■ Article III, section 27 of the Alaska Constitution allows the governor to make recess appointments and states that "[t]he duration of such appointments shall be prescribed by law." This provision gives the legislature authority to set the duration of interim appointments. The attorney general argues that "section 27 plainly contemplates interim appointments of limited duration." This argument implies that the constitution draws a significant substantive distinction between in-session appointees and recess appointees. Based upon this distinction, the attorney general contends that all recess appointments are subject to durational limitations different from those for appointments made during a session. The attorney general urges us to adopt this reasoning and conclude that Governor Hickel could not nominate Cook to a full term on the APUC while the legislature was in recess, and consequently that the legislature was without power to confirm Cook to a full term on the APUC.

We do not read section 27 to create a fundamental distinction between recess appointments and in-session appointments, or to deprive the legislature of its confirmation power with respect to recess appointees. On the contrary, the text of section 27 refers to recess appointments as appointments "requiring confirmation by the legislature." Alaska Const. art. III, § 27 (emphasis added). Confirmation of recess appointees is thus explicitly envisioned by the plain language of the constitution. Governor Hickel appointed Cook to a full term as an APUC commissioner; the fact that the appointment occurred while the legislature was in recess does not alter the nature of the appointment.

The history of section 27 does not suggest that the drafters intended some substantive distinction between recess appointments and other appointments. The first draft of the recess appointment provision clearly prevented the legislature from confirming an interim appointee to a full term.[8] An amendment

---

7. See note 5, supra.

8. That draft read: "[A recess appointment] shall expire at the end of the next regular session of the Legislature, unless a successor shall be soon-er appointed and qualified." 6 Proceedings of the Alaska Constitutional Convention (PACC) App. V at 121 (December 15, 1955).

was made specifically "to make it possible for the legislature to confirm the person who has been given an interim appointment." 3 Proceedings of the Alaska Constitutional Convention (PACC) 2260–61 (January 13, 1956).

The entire provision was subsequently stricken because the delegates felt it would have duplicated existing statutes. 3 PACC 2264–65 (January 13, 1956). Nonetheless, because some delegates were concerned that in the absence of constitutional protection a future legislature might, by amending the statute, prevent the executive from filling vacancies arising during recess, the predecessor to section 27 was adopted.[9] 3 PACC 2265–69 (January 13, 1956). The original version of this predecessor stated: "The Governor may fill any vacancy occurring in any office during a recess of the Legislature, as may be prescribed by law." 3 PACC 2268–69 (January 13, 1956). To avoid "the possibility that the legislature could by law actually prohibit the governor from even making a recess appointment," the legislative power granted in this version was limited to prescribing the duration of recess appointments. 3 PACC 2284–85 (January 13, 1956).

The text and history of section 27 thus suggest that recess appointments are a subset of, rather than distinct from, the regular appointments described by article III, section 26 of the Alaska Constitution. The constitution does not prevent the legislature from confirming recess appointments. The duty imposed on the legislature to prescribe the duration of recess appointments was not intended to deprive the legislature of its confirmation power over such appointments. Certainly that duty did not implicitly give the governor power to prevent the legislature from considering whether to confirm a recess appointment.

### 2. Appointment statutes

The statutes enacted by the legislature similarly treat recess appointments no differently than other appointments. Alaska Statute 39.05.080(1) states:

The appointing authority shall, within 30 days of the convening of the legislature in regular session, present to the legislature for confirmation the names of the following persons: (A) persons appointed to a position or membership who have not previously been confirmed by the legislature or

---

9. Delegate Buckalew stated, "I doubt seriously if the governor would have authority to make a recess appointment." 3 PACC 2267 (January 13, 1956). In line with Delegate Buckalew's concerns, Delegate Sundborg offered an amendment which eventually became section 27. *Id.* at 2268. Delegate Victor Rivers objected to the Sundborg amendment on grounds that were a defense of the earlier stricken draft provision insofar as that draft prevented persons nominated for an office and rejected for confirmation by the Senate from serving as subsequent recess appointees. Delegate Rivers stated, speaking of the Sundborg amendment:

That amendment does nothing more than give [the governor] an implied power that is already here. It doesn't take care of an appointment he may make. Suppose the governor makes an appointment of "Joe Doaks" to be a secretary of some department, or head of some department, the legislature does not confirm him. The governor submits no new name; the legislature goes out of session; the governor then turns around and reappoints "Joe Doaks" interim head until the next session of the legislature meets. By our wording we have taken care of that. By this wording it takes care of nothing that is not already an implied power. The legislature already has the power to provide by law.

*Id.* at 2268–69. To this argument Delegate Sundborg replied:

My amendment would give the legislature the power to take care of that by whatever language or provision it desires. It does give the governor the right to make an interim appointment and then it says that the rules governing such interim appointments shall be laid down by the legislature.

*Id.* at 2269.

Subsequently, Sundborg clarified the initial amendment with a new one which is in substance existing section 27. He stated that the intent of the old amendment and the new amendment were the same:

[A] little while ago I submitted another amendment which I thought accomplished what this says, but I was advised by some of the technical staff it did not actually accomplish what I had intended, in that it left the possibility present that the legislature could by law actually prohibit the governor from even making a recess appointment under the existing language. This new section says that the governor may make a recess appointment but that the duration of the appointment shall be determined by the legislature.

*Id.* at 2284–85.

either house of it; (B) persons appointed subject to confirmation to fill an existing position or membership vacancy....

Because the governor presents the names of appointees within thirty days of the legislature's convening, the attorney general reasons that recess appointments must terminate at that point. The plain language of the statute, however, reveals no such limitation. The governor "shall" present within thirty days the names of the appointees. AS 39.05.080(1). The statute's mandatory language provides the governor no discretion to reconsider an appointment or refuse to present the name of an appointed individual. The plain language of the statute simply does not suggest that appointments made during recess must end thirty days after the recess. *Cf. In re Advisory Opinion to Governor,* 247 So.2d 428, 430–31 (Fla.1971) (discussing statutory provision explicitly limiting term of recess appointments). Rather, the statute suggests that recess appointments may be confirmed in the same manner as in-session appointments.

The statutes governing appointments to the APUC do not distinguish between recess and in-session appointments. Alaska Statute 42.05.030(a) sets the term of office for APUC members at six years. "An appointee selected to fill a vacancy shall hold office for the balance of the full term for which the appointee's predecessor on the commission was appointed." AS 42.05.030(b). Until the appointment has been made, the prior occupant is entitled to continue to hold office. AS 42.05.030(a). An appointee is entitled to hold office "[p]ending confirmation or rejection" by the legislature. AS 39.05.080(4). The duration of a recess APUC appointment, therefore, is exactly that of an appointment made while the legislature is in session: until rejected by the legislature or, if confirmed, for six years. *See Bell v. Sampson,* 232 Ky. 376, 23 S.W.2d 575, 580 (1930) (allowing legislature to confirm recess appointees despite opposition of governor, where appointments governed by statute requiring legislature to take action upon appointments at "its first session held thereafter.").

We hold that recess appointments are of the same duration as all other appointments, and subject to legislative confirmation. Cook's appointment, having been confirmed by the legislature, is accordingly for the full six-year term of an APUC member.

## IV. CONCLUSION

Because Cook had already been placed in office, Governor Knowles could not remove him without complying with the removal statutes, and the legislature could validly confirm him. Furthermore, AS 39.05.080 does not terminate recess appointments when the legislature convenes. Cook was appointed to a full term as an APUC member, and confirmed as such.

We consequently REVERSE the decision of the superior court, and REMAND with directions that the legislature's partial summary judgment motion be GRANTED, and for further proceedings in both cases consistent with our discussion above.