Donald V. Watkins appeals from a judgment in favor of the Board of Trustees of Alabama State University ("the Board") and Dr. Joe Reed, in his official capacity as chairman of the Board, declaring that Watkins is not a member of the Board. We reverse and remand.
The following pertinent facts are not disputed by the parties: 1) On March 3, 1994, while the Legislature was in session, then Governor Jim Folsom, Jr., appointed Watkins to the Board for a term expiring on January 31, 2002, and then submitted the appointment to the State Senate for its consideration; 2) the Senate's Standing Committee on Confirmations unanimously approved Watkins's appointment and reported the appointment to the full Senate for a vote; and 3) the legislative session ended before the full Senate had voted to confirm or to reject Watkins's appointment.
Watkins filed this action, alleging that the Board had refused to recognize him as a duly appointed member of the Board, and seeking injunctive and declaratory relief. The trial court entered an order in favor of the Board, stating, in pertinent part, as follows:
 "Pursuant to his appointment, Mr. Watkins properly began to serve as a member of the Board of Trustees immediately, and his name was submitted by the Governor to the Alabama Senate for confirmation promptly after the appointment was made. On March 9, 1994, Mr. Watkins's nomination received a favorable recommendation from the Senate Confirmations Committee, but when the nomination came up on the floor of the senate, the senate membership decided not to vote on the nomination, but rather to carry the confirmation vote over until another time. On April 25, 1994, without Mr. Watkins's nomination's ever *Page 337 
having received an affirmative vote of confirmation, the senate adjourned sine die.
 "The evidence in this case shows that upon adjournment sine die, all matters pending before the legislature die. No pending matters are carried over to the next session of the legislature. Indeed, following adjournment sine die, all documents relating to matters pending before adjournment are removed from the senate chambers and are stored in archives. In the truest sense, adjournment sine die kills all matters awaiting a vote.
 "Plaintiff Watkins contends in this case that despite the adjournment sine die of the Alabama Legislature without his appointment's having been confirmed, he continues to serve on the Board of Trustees until, and unless, his name is again brought up on the senate floor, and his confirmation is affirmatively rejected. He further contends that because there is no way for the legislature to lawfully bring up his name for a vote in the subsequent session, he now may serve out the term of eight years to which he was appointed. Defendants, on the other hand, contend that the adjournment sine die of the Alabama Legislature on April 25, 1994, ended Mr. Watkins's appointment by force of law.
 "Both parties agree that Dunn v. Alabama State University Board of Trustees, 628 So.2d 519
(Ala. 1993), is dispositive of the issue before the Court. In Dunn, the Alabama Supreme Court ruled decisively that the adjournment of the legislature ends an unconfirmed appointment to the ASU Board of Trustees by force of law.
 "Plaintiff initially sought to avoid this holding by asserting that the appointees in Dunn were appointed during a recess of the legislature, while he was appointed during a legislative session. That distinction, however, is one without a difference, and, indeed, at trial, plaintiff acknowledged that this case cannot turn on any perceived differences between Alabama Code 1975, § 16-50-20(a) and § 16-50-25. That concession is appropriate because the former section, which provides that '[a]ll appointments shall be effective until adversely acted upon by the Senate' applied to the appointees in Dunn, whose unconfirmed appointments, according to the Supreme Court, would have ended upon adjournment sine die of the legislature.
 "After discussing the effect of a committee vote rejecting the Governor's appointees, the Dunn Court stated that it addressed that rejection only because the parties had so thoroughly briefed it. The Court emphasized that despite its discussion of the committee's action, its decisive and principal ruling was that the adjournment of the legislature ended the appointments by force of law.
". . . .
 "In the present case, it makes no difference that the Senate Confirmations Committee approved the appointment of Mr. Watkins. In order for confirmation to occur, an appointee must be confirmed not merely by a committee, but rather by the entire senate. Just as was true in Dunn, therefore, adjournment sine die constituted the adverse action contemplated by [§ 16-50-20(a)], and ended Mr. Watkins's appointment by force of law."
The sole issue presented is whether Watkins was still a member of the Board after the 1994 legislative session had ended. Resolution of this issue turns on the proper construction of Ala. Code 1975, § 16-50-20(a) and § 16-50-25.
Section 16-50-20(a) provides:
 "There is hereby created a board of trustees for Alabama State University, the state educational institution at Montgomery, Alabama. The board of trustees shall consist of two members from the congressional district in which the institution is located and one member from each of the other congressional districts in the state as constituted on October 6, 1975, and who shall reside in that district, four members from the state at large who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of *Page 338 the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adversely acted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor. A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms. The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms. No trustee shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such. No member of the governing board or employee or student of any public postsecondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board. No member shall serve past September 30 following his seventieth birthday."
(Emphasis added.) Section 16-50-25, relating to the appointment of successor trustees at Alabama State University, reads:
 "Any vacancy in the office of trustee occurring during the recess of the Legislature shall be filled by appointment of the Governor from the same category in which the vacancy occurred. Such appointee shall hold office until the next session of the Legislature, when the vacancy shall be filled by the Governor by and with the consent of the Senate. A trustee appointed to fill a vacancy by the Governor, by and with the consent of the Senate, shall hold office during the unexpired term."
(Emphasis added.) The emphasized portions of these two sections lie at the heart of this controversy.
We note, initially, that the parties agree that § 16-50-20(a) and § 16-50-25 should be construed in pari materia and that these sections create a procedure for an appointment process that should operate as follows: 1) if a vacancy on the Board occurs while the Legislature is not in session, the Governor has the authority to make an interim appointment, which ends when the Legislature reconvenes (§ 16-50-25); 2) the termination of the interim appointment creates a new vacancy on the Board; 3) if a vacancy on the Board occurs while the Legislature is in session, whether by the termination of an interim appointment or otherwise, the procedure for filling the vacancy is set out in § 16-50-20(a); and 4) the Governor's "in-session" appointee begins to serve immediately, before the end of the legislative session, and continues to serve unless the Senate adversely acts upon the appointment (§ 16-50-20(a)). After carefully examining § 16-50-20(a) and § 16-50-25, we conclude, for the reasons that follow, that this is a correct construction of these two sections.
The fourth sentence of § 16-50-20(a) provides, in pertinent part, that "[t]he trustees shall be appointed by the Governor, by and with the advice and consent of the Senate." Section16-50-25 provides, in pertinent part, that an interim appointee "shall hold office until the next session of the Legislature, when the vacancy shall be filled by the Governor by and with the consent of the Senate." These two sections read together, as they must be, in accordance with our well-established rules of statutory construction, see McRae v. Security PacificHousing Services, Inc., 628 So.2d 429 (Ala. 1993) (the statute as a whole must be considered and construed reasonably so as to harmonize its provisions), clearly require that any appointment to the Board made during a legislative session be by and with the consent of the *Page 339 
Senate. If this were the only language in these two sections dealing with the Senate's role in the appointment process, we would be constrained to hold that James v. Langford,695 So.2d 1158 (Ala. 1997), controls and that no appointment to the Board would be effective until confirmation by the full Senate.[1]
However, unlike the constitutional provision at issue in Jamesv. Langford, § 16-50-20(a), which provides the basic procedural formula for making an appointment to the Board, contains the following sentence: "All appointments shall be effective until adversely acted upon by the Senate." This language, which appears as the sixth sentence in § 16-50-20(a), follows two sentences after the sentence that provides for an appointment to be made "by and with the advice and consent of the Senate." These two sentences — the fourth and the sixth — are clearly at odds with each other and create an ambiguity within §16-50-20(a) as to the Senate's proper role in the appointment process. The fourth sentence contemplates that there can be no valid appointment without Senate confirmation; the sixth sentence contemplates an appointment by the Governor without Senate confirmation. In essence, the sixth sentence contemplates a procedure whereby the Governor has the authority to make an appointment to the Board and the Senate has the authority to nullify that appointment by "adversely act[ing] upon [it]." Applying well-established rules of statutory construction, basic to which is effectuating legislative intent, we agree with the parties that § 16-50-20(a) provides a mechanism whereby the Senate's supervisory role in the appointment process (its role of providing "advice" and "consent") is performed by virtue of its exercise of what amounts to a veto power over the Governor's appointment. We cannot conclude that the sixth sentence, providing that "[a]ll appointments shall be effective until adversely acted upon by the Senate," was mere surplusage, given the fact that the Legislature is quite adept at creating an appointment procedure requiring an affirmative vote of the Senate to effectuate an appointment to a public university's board of trustees. SeeDunn v. Alabama State University Board of Trustees,628 So.2d 519 (Ala. 1993), discussing the creation of a board of trustees for Alabama A M University. Instead, we must give effect to every word in § 16-50-20(a), if possible, and that can be done, in keeping with our understanding of legislative intent, by holding that the sixth sentence modifies and controls the fourth sentence. See Alabama State Board of Health ex rel.Baxley v. Chambers County, 335 So.2d 653 (Ala. 1976) (where two sections or provisions of an act are conflicting, the last in order of arrangement controls).
What the parties disagree on in this case is the meaning to be given to the words "adversely acted upon" in the sixth sentence of § 16-50-20(a). The Board contends that the Senate took adverse action by initially postponing and then not voting on Watkins's appointment before adjourning sine die. Relying onDunn, the Board argues, and the trial court agreed, that anything less than an affirmative vote by the full Senate confirming an appointment by the Governor constitutes adverse action nullifying the appointment. Watkins contends that the sixth sentence of § 16-50-20(a) clearly contemplates affirmative adverse action, not inaction, to nullify an appointment. According to Watkins, to construe the sentence as the Board suggests would "do violence to the plain language and meaning of [the] statute."
The Board points out, and the trial court held, that the failure of the Legislature to act on a pending bill or on other matters needing legislative approval, before the Legislature adjourns sine die, effectively "kills" that bill or matter. We agree. However, we are not persuaded that that situation is analogous to the situation here, or that it is particularly helpful in resolving the issue presented — whether §16-50-20(a), which requires adverse action to nullify an appointment to the Board, may be satisfied by *Page 340 
inaction on the Senate's part. Instead of attempting to guess at what the Legislature meant when it provided that all appointments shall be effective "until adversely acted upon by the Senate," we think it more appropriate to look to the Senate's own internal rules for a better understanding of what the Senate considers to be adverse action. We did exactly that in Dunn, supra, wherein this Court, holding that the action of the Committee on Confirmations rejecting the appointment of Ross Dunn and Jo Ann Paddock was an adverse action of the Senate, stated:
 "There is a common thread running through the legislation creating the mechanism for appointing trustees of the various state-supported institutions. That thread is that the Governor shall make the appointments, but the appointments must be subject to the advice and consent of the Senate. Obviously, the Governor could not dictate how the Senate is to perform its statutory duty, nor can the Senate dictate to the Governor how he is to perform his. The Senate performs its responsibility by applying its own internal rules of procedure. Before 1951, appointments by the Governor to fill vacancies in trustee positions were submitted to the secretary of the Senate. There they would remain until that body called on the secretary to transmit the appointments to it for action. Beginning in 1951, such recess appointments were sent to the secretary of the Senate and the secretary then submitted them to the Committee on Rules and, recently, to the Committee on Confirmations.
 "After the Senate began referring nominations and appointments to a committee, it adopted Senate Rule 33 [now Senate Rule 32, see Rules of the Senate of the State of Alabama (1995) (revised July 10, 1996)], which prescribed the procedure for handling them. Senate Rule 33 provides:
 " 'All nominations and appointments shall be referred to, and be reported from the Committee on Confirmations before consideration by the entire Senate. If the Senate rejects a nomination or appointment, it will either forward its rejection to the Secretary of the Senate who shall forward the rejection to the appointing authority and request a new nominee be submitted, or, in the event that the pertinent statute permits, the Senate may select a substitute appointment.'
 "Rules of the Senate of the State of Alabama 33 (1991) (emphasis added [in Dunn] ).
 "On September 9, 1991, roughly two months after the trustees in this case were voted on, the Senate passed a resolution that provided:
 " 'Whereas by constitutional and statutory mandates, the Senate is required to take action upon various nominations and appointments; and, whereas any action of appointment or nomination by any person, board, committee or any other legal entity that requires senate advice and consent and/or confirmation shall be done in compliance with the Senate Rule Thirty-three; and now therefore, be it resolved by the Senate of Alabama, that failure of the Committee on Confirmations to report a nomination or appointment of any person shall be deemed a rejection by the Senate of such person.'
 "Although this resolution was passed after the vote taken on the trustees involved in this litigation, this resolution purportedly put into writing the precedential procedures that had been followed by the Senate in its business for over 40 years. That is, once a nomination failed to get out of the proper committee, that nomination was dead."
628 So.2d at 524-25. (Emphasis added.)
The clear import of Dunn and of what is now Senate Rule 32 is that the Senate has created a procedure for acting adversely on the Governor's appointments. That procedure, which is embodied in Senate Rule 32 and the Senate resolution passed on September 9, 1991, delegates to the Committee on Confirmations the authority to formally reject an appointee, in which case the full Senate is not called on to act. The Committee's rejection, under the holding in Dunn, constitutes adverse action by the Senate. However, if the Committee on Confirmations *Page 341 
approves an appointee and reports his or her name to the full Senate for further consideration, as happened here to Watkins, Senate Rule 32 contemplates that the full Senate will either approve or reject the appointee. The Rule provides further that "[i]f the Senate rejects a nomination or appointment, it will either forward its rejection to the Secretary of the Senate who shall forward the rejection to the appointing authority and request a new nominee [or appointee] be submitted, or, in the event that the pertinent statute permits, the Senate may select a substitute appointment." Nothing in Senate Rule 32 or in any of the other internal rules of the Senate suggests that a gubernatorial appointment to the Board can be "adversely acted upon" by the Senate's not voting on an appointee before adjourning sine die. One would expect this, because, unlike a pending bill, which is of no legal import until approved by the Legislature, an appointment to the Board is effective by action of the Governor alone. We cannot logically hold that inaction on the Legislature's part can "kill" or "undo" something that the Governor has done pursuant to statutory authority.[2]
We are aware that the following paragraph in Dunn suggests that the full Senate must vote to confirm an appointee or else the appointment is nullified:
 "Although we have discussed, in some detail, the defendants' arguments concerning the authority of the Senate's Committee on Confirmations to reject or divest the Governor's nominees, we have done so because of the extensive elaboration of this point in the brief of the defendants. However, the issue involved here, namely, the right of the trustee to hold office, has been clearly set forth in § 16-50-25. In other words, by virtue of this section, unless the Governor's appointee is confirmed by vote of the entire Senate in the next session of the legislature, the trustee's appointment is ended by force of law."
628 So.2d at 525. (Emphasis added.) The trial court and the Board relied on this paragraph, and their reliance is certainly understandable. However, the emphasized portion of this paragraph, which is clearly inconsistent with the provision requiring Senate disapproval to nullify an appointment to the Board, and which is inconsistent with most of the discussion preceding it in Dunn, did not set out the principal holding inDunn. The holding in Dunn was as follows:
 "Therefore, we hold that the action of the Committee on Confirmations rejecting the appointments of Dunn and Paddock was an adverse action of the Senate, which had the effect of divesting them of any authority to assume, or attempt to assume, positions of trustees on the Board of Trustees of Alabama State University."
628 So.2d at 525. To the extent that this dictum relied on by the trial court and the Board is contrary to our holding in the present case, it is disapproved.
For the foregoing reasons, the judgment is reversed and the cause is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED. *Page 342 
HOOPER, C.J., and ALMON, KENNEDY, and SEE, JJ., concur.
COOK, J., concurs specially.
MADDOX and BUTTS, JJ., dissent.
[1] In Langford, this Court unanimously held that the new appointees, Richardson and McDonald, had not been validly appointed to serve new terms on the Board of Trustees of Auburn University because they had not been appointed by the Governor and the Senate. See Ala. Const. 1901, Amendment 161 (requiring that members of the Board of Trustees of Auburn University be "appointed by the governor, by and with the advice and consent of the senate").
[2] We note that both the Legislative Reference Service and the attorney general have come to the same conclusion. In an opinion to Senator Charles D. Langford, dated August 14, 1991, the attorney general concluded: "Under the unique wording of the Alabama State University statute a nominee [appointee] to the Board of Trustees serves on that Board unless and until affirmative rejection by the Alabama Senate upon nomination [appointment] to that body by the Governor." In an opinion to Senator Langford, dated April 13, 1994, the director of the Legislative Reference Service stated in part:
 "You have asked what happens to an individual who has been nominated to serve on Alabama State University's Board of Trustees while the Legislature is in session, and the individual receives a favorable recommendation from the Senate Confirmations Committee but the Senate takes no further action.
 "Section 16-50-20(a) states in relevant part: 'All appointments shall be effective until adversely acted upon by the Senate.'
 "In light of the fact that the Senate Committee on Confirmations favorably recommended and reported the nominee to the full Senate and that body has taken no further action on the nomination, it would appear that the nomination is effective until the Senate takes action contrary to the committee's recommendation."
We note that the Senate apparently had the benefit of this opinion from the Legislative Reference Service approximately 12 days before it adjourned on April 25, 1994, without voting on Watkins's appointment. In light of this, it would be speculative at best to assume that the Senate's adjourning without voting on Watkins's appointment was intended by the Senate to constitute "adverse action."