737 So.2d 443 (1999)
Jerome TUCKER
v.
Donald v. WATKINS et al.
Thomas Figures
v.
Donald V. Watkins et al.
1980464, 1980465, 1980492 and 1980493.
Supreme Court of Alabama.
March 26, 1999.
James H. Anderson of Beers, Anderson, Jackson, Nelson, Hughes & Patty, P.C., Montgomery, for appellant Jerome Tucker.
Fred D. Gray of Gray, Langford, Sapp, McGowan, Gray & Nathanson, Tuskegee; W. Troy Massey, Montgomery; and Robert D. Segall of Copeland, Franco, Screws & Gill, P.A., Montgomery for appellant Thomas Figures.
Joe R. Whatley, Jr., and Peter H. Burke of Whatley Drake, L.L.C., Birmingham, for appellees Donald V. Watkins and Robert A. Jones, Jr.
H. Arthur Edge III, Birmingham, for amici curiae certain trustees of Alabama State University (B. Maxine Coley, Oscar Crawley, Burford Crutcher, and Katherine W. Wright) in support of the appellees.
George L. Beck, Jr., of Beck & Byrne, P.C., Montgomery, for amicus curiae Charles D. Langford.
HOUSTON, Justice.
These appeals involve trustees of Alabama State University ("ASU") and Ala. Code 1975, §§ 16-50-20 and 16-50-25. See Watkins v. Board of Trustees of Alabama State University, 703 So.2d 335 (Ala. 1997).
The trial court granted a petition for the writ of quo warranto filed by Donald V. Watkins and Robert A. Jones in their action against Joe L. Reed, in his capacity as chairman of the Board of Trustees ("Board") of ASU; Jerome Tucker; and Thomas Figures. The court held that Tucker and Figures were unlawfully holding or exercising the office of trustee on the Board of ASU. The trial court removed Tucker and Figures from the office of trustee, prohibited them from serving on the Board, and declared that Watkins and Jones each held the office of trustee on the Board of ASU and that Watkins and Jones were entitled to participate, vote, and perform all other functions and duties of trustees. Figures and Tucker appeal. We affirm.
The parties stipulated to the following facts:
Watkins was appointed to the Board of ASU by the Governor on March 3, 1994, while the Legislature was in session. The Senate's Standing Committee on Confirmations approved Watkins's appointment and reported the appointment to the full Senate for a vote. The legislative session *444 ended without the full Senate's taking any action on Watkins's appointment. The position Watkins would occupy expires in January 2002.
On September 29, 1998, the Governor sent Watkins a letter purporting to rescind and withdraw Watkins's appointment as a trustee on the Board of ASU. On the same day, the Governor purported to appoint Figures to serve in that position.
Jones was initially appointed to the Board while the Legislature was not in session. When the Legislature convened for the 1998 Regular Session, the Governor submitted to the Senate Jones's name as an appointee to the Board of ASU. The Senate's Standing Committee of Confirmations approved Jones's appointment. The legislative session ended without the full Senate's taking any action on Jones's appointment. The position Jones would occupy expires in January 2005. On September 29, 1998, the Governor sent Jones a letter purporting to rescind and withdraw Jones's appointment as a trustee on the Board of ASU. On the same day, the Governor purported to appoint Tucker to serve in that position.
Ala.Code 1975, § 16-50-20(a), provides:
"There is hereby created a board of trustees for Alabama State University, the state educational institution at Montgomery, Alabama. The board of trustees shall consist of two members from the congressional district in which the institution is located and one member from each of the other congressional districts in the state as constituted on October 6, 1975, and who shall reside in that district, four members from the state at large who shall reside in different districts, and the Governor, who shall be ex officio president of the board. Except for a trustee at large, the position of any trustee shall be vacated at such time as he shall cease to reside in the district from which he was appointed. The trustees shall be appointed by the Governor, by and with the advice and consent of the Senate, in such manner that the membership shall consist of at least a majority who are alumni and who have received a bachelor's degree from the said university; at least one-half of the board shall be from the prevailing minority population of the state according to the last or any succeeding federal census. Trustees shall hold office for staggered terms of three, six, nine and 12 years with an equal number appointed to like terms, such period of terms designated by the appointing authority, with one-fourth to expire every three years, or until their successors are appointed. All appointments shall be effective until adversely acted upon by the Senate. Provided, however, no trustee who is currently serving on the board or whose term has just expired, who has been previously confirmed by the Senate, shall be required to be reconfirmed for the new term under this section, once appointed by the Governor. A member may be appointed to serve a second term of 12 years, but no member shall be appointed to serve as trustee for more than a total of two terms. The first members, however, shall be eligible to serve for two full additional terms in addition to their initial terms. No trustee shall receive any pay or emolument other than his actual expenses incurred in the discharge of his duties as such. No member of the governing board or employee or student of any public postsecondary education institution, no elected or appointed official having the power of review of the Alabama State University budget, other than the Governor and no employee of the State of Alabama shall be eligible to serve on the board. No member shall serve past September 30 following his seventieth birthday."
Alabama Code 1975, § 16-50-25, provides:
"Any vacancy in the office of trustee occurring during the recess of the Legislature shall be filled by appointment of the Governor from the same category in which the vacancy occurred. Such appointee *445 shall hold office until the next session of the Legislature, when the vacancy shall be filled by the Governor by and with the consent of the Senate. A trustee appointed to fill a vacancy by the Governor, by and with the consent of the Senate, shall hold office during the unexpired term."
Watkins was appointed while the Legislature was in session; therefore, § 16-50-25 does not apply to him. In Watkins v. ASU, this Court held that the sentence reading "All appointments shall be effective until adversely acted upon by the Senate" provides "a mechanism whereby the Senate's supervisory role in the appointment process (its role of providing `advice' and `consent') is performed by virtue of its exercise of what amounts to a veto power over the Governor's appointment." Watkins, 703 So.2d at 339.
The adjective "effective," as it is used in the phrase "[a]ll appointments shall be effective until," is defined as "[o]perative; in effect," The American Heritage Dictionary of the English Language 416 (1969), or "[a]ctually in operation or in force; functioning." The Random House Dictionary of the English Language 454 (1973).
In Cook v. Botelho, 921 P.2d 1126, 1129 (Alaska 1996), the Alaska Supreme Court wrote:
"Courts have uniformly held that an executive's power to reconsider an appointment ends when the executive takes the last act required to complete the appointment process. Marbury [v. Madison, 5 U.S. (1 Cranch) 137, 162, 2 L.Ed. 60 (1803)]; In re Comm'n on Governorship of Cal., 26 Cal.3d 110, 160 Cal.Rptr. 760, 767, 603 P.2d 1357, 1365 (1979); McChesney v. Sampson, 232 Ky. 395, 23 S.W.2d 584, 587 (1930); State v. Essling, 268 Minn. 151, 128 N.W.2d 307, 312-13, (1964); Burke v. Schmidt, 86 S.D. 71, 191 N.W.2d 281, 284 (1971).
"The rule established by cases considering the issue is that the last act of the executive is the act which places the appointee in office.
"`If appointment by the governor had had the effect of placing [the appointee in office] and authorizing him to perform its functions, there could be no question but that the proposition that the governor had exhausted his power in making the appointment and could not withdraw it would apply.'
"McBride v. Osborn, 59 Ariz. 321, 127 P.2d 134, 136 (1942). See also In re Comm'n on Governorship of Cal., [26 Cal.3d at 122,] 160 Cal.Rptr. [at 767], 603 P.2d at 1365 (holding that governor may withdraw appointee where appointment `does not complete the appointive process or confer even an interim right to assume office'); McChesney, [232 Ky. at 401,] 23 S.W.2d at 587 (`[U]nder our system the appointee of the Governor takes the office, enters upon the performance of its duties, and is charged with responsibility. He holds then subject alone to the action of the Senate.'); Essling, [268 Minn. at 158,] 128 N.W.2d at 313 (holding that last act of executive is act that `vest[s the appointee] with the powers and duties of the office'); Burke, [86 S.D. at 77,] 191 N.W.2d at 284 (holding that gubernatorial power to withdraw depends upon `whether the action of the executive is [final and] complete and places the appointee in office without further action')."
Therefore, Watkins was appointed to a term that ends in January 2002, and that appointment is vested in him subject to divestment by the Senate's "adversely acting" on the appointment. Once the appointment was made by the Governor, the Governor had no power to undo it. That power resided only in the Senate. Therefore, there was no vacancy for the Governor to fill when he purported to appoint Figures; the trial court ruled properly in holding that Figures was unlawfully holding or exercising the office of trustee, in prohibiting Figures from serving on the Board, and in declaring that Watkins holds the office of trustee on the Board of ASU.
*446 Jones was appointed while the Legislature was in recess; therefore, § 16-50-25 applies. Jones held office until the next session of the Legislature, at which time a vacancy occurred that was filled by the Governor, who submitted Jones's name to the Senate as an appointee to the Board of ASU. Once this happened, the procedure was governed by § 16-50-20(a), and the appointment was vested in Jones, until January 2005, subject to divestment by the Senate's "adversely acting" on the appointment. The Senate did not act adversely on it. Once the appointment was made by the Governor's submitting Jones's name to the Senate, during a legislative session, the appointment vested in Jones subject to divestment only by adverse action of the Senate. Therefore, there was no vacancy when the Governor purported to appoint Tucker. The trial court ruled properly in holding that Tucker was unlawfully holding or exercising the office of trustee, in prohibiting Tucker from serving on the Board, and in declaring that Jones holds the office of trustee on the Board of ASU.
AFFIRMED.
HOOPER, C.J., and KENNEDY, SEE, LYONS, and BROWN, JJ., concur.
MADDOX and JOHNSTONE, JJ., dissent.
MADDOX, Justice (dissenting).
I must respectfully dissent. My views on the interpretation and application of §§ 16-50-20(a) and 16-50-25, Ala.Code 1975, are clearly expressed in my dissenting opinion in Watkins v. Board of Trustees of Alabama State University, 703 So.2d 335, 343 (Ala.1997) (Maddox, J., dissenting).
JOHNSTONE, Justice (dissenting).
I respectfully dissent. The cases under consideration are sequels to Watkins v. Board of Trustees of Alabama State University, 703 So.2d 335, 338 (Ala.1997), which held
"that [§§ 16-50-20(a) and 16-50-25, Ala. Code 1975,] should be construed in pari materia and that these sections create a procedure for an appointment process that should operate as follows: 1) if a vacancy on the Board occurs while the Legislature is not in session, the Governor has the authority to make an interim appointment, which ends when the Legislature reconvenes (§ 16-50-25); 2) the termination of the interim appointment creates a new vacancy on the Board; 3) if a vacancy on the Board occurs while the Legislature is in session, whether by the termination of an interim appointment or otherwise, the procedure for filling the vacancy is set out in § 16-50-20(a); and 4) the Governor's `in-session' appointee begins to serve immediately, before the end of the legislative session, and continues to serve unless the Senate adversely acts upon the appointment (§ 16-50-20(a))."
What the first Watkins case does not hold and what the case of Dunn v. Alabama State University Bd. of Trustees, 628 So.2d 519 (Ala.1993), does not hold is that appointees in the position of the plaintiffs in these cases under considerationthat is, appointees whose appointments were approved by the Senate Standing Committee on Confirmations but were not confirmed by the whole Senate before its adjournment sine diehave any security against the Governor's withdrawal of their appointments.
The majority holds today that the inaction of the whole Senate confers upon these plaintiffs the same job security that a positive vote of confirmation by the whole Senate would confer. In adopting the two statutory provisions at issue, the Legislature probably did not intend to give inaction the same effect as action and thereby to render action (a positive vote of confirmation by the whole Senate) superfluous. The more likely intent is that the three options of the Senate import three different respective consequences: confirmation means the appointee's job is secure; *447 rejection means the appointee's job is gone; and inaction means the appointee's job is insecure and the appointment is subject to withdrawal, just as it is before either confirmation or rejection.
The majority cites Cook v. Botelho, 921 P.2d 1126 (Alaska 1996), as authority for the proposition that "[o]nce the appointment was made by the Governor, the Governor had no power to undo it." Cook does not bind this court, and the application of Cook to these cases under consideration unnecessarily deprives the Governor of the power to ensure that his appointees are capable of achieving the public image that results from positive confirmation by the Senate. Thus Cook should be rejected for this reason and for the reason that it, like the holding of the majority of this Court in these cases, defies the logic of three consequences from three Senate options and renders a positive Senate confirmation superfluous, as already discussed.